2016 UT App 91

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
NIKOLAS A. OTVOS,
Appellant.

Per Curiam Decision
No. 20150464-CA
Filed May 5, 2016

Second District Court, Ogden Department
The Honorable Joseph Bean
No. 131900252

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

Before JUDGES STEPHEN L. ROTH, MICHELE M. CHRISTIANSEN, and
KATE A. TOOMEY.

PER CURIAM:

¶1      Nikolas A. Otvos appeals his sentence following his plea of guilty and mentally ill (GAMI) to theft, a second degree felony. Otvos claims that the district court plainly erred by failing to find that he posed a danger to himself or others if he was committed to prison and by failing to include a provision for him to return to the Utah State Hospital if his condition deteriorates. In the alternative, he argues that his trial counsel was ineffective in failing to address these issues in the district court. We affirm.

¶2      "To prevail under plain error review, a defendant must demonstrate that [1] an error exists; [2] the error should have been obvious to the trial court; and [3] the error was harmful,

i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Swogger*, 2013 UT App 164, ¶ 2, 306 P.3d 840 (alterations in original) (citation and internal quotation marks omitted). To demonstrate ineffective assistance of counsel, a defendant must prove both deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant claiming ineffective assistance "bears the burden of establishing prejudice as a demonstrable reality," *State v. McNeil*, 2013 UT App 134, ¶ 30, 302 P.3d 844 (citations and internal quotation marks omitted), *aff'd*, 2016 UT 3, 365 P.3d 699, and "the likelihood of a different result must be substantial, not just conceivable," *Menzies v. State*, 2014 UT 40, ¶ 91, 344 P.3d 581 (alteration in original) (citation and internal quotation marks omitted).

¶3     Our review is limited to the district court's sentencing proceedings. The district court sentenced Otvos to the statutory prison term for the offense and committed him to the custody of the Utah Department of Human Services for admission to the Utah State Hospital for care and treatment. *See* Utah Code Ann. § 77-16a-202 (LexisNexis 2012). Although Otvos claims he was immediately transferred to the Utah State Prison, there is no record before this court of the proceedings that may have resulted in his transfer from the state hospital to the prison. *See id.* § 77-16a-203 (providing for an offender's transfer by the department to the prison if the offender no longer has a mental illness, or has a mental illness that can be adequately treated while in prison, or has been stabilized to the point where admission to the state hospital is no longer necessary "to ensure adequate mental health treatment").

¶4     When sentencing a defendant after a GAMI plea, the sentencing court shall first "impose any sentence that could be imposed under law upon a defendant who does not have a mental illness and who is convicted of the same offense." *Id.* § 77-16a-104(3). The sentencing court must then determine

whether to impose a sentence of probation or to commit the offender to the state hospital or the state prison. *See id.* In order to commit the defendant to the state hospital, the court must first find, by clear and convincing evidence, that

> (A) because of the defendant's mental illness the defendant poses an immediate physical danger to self or others, including jeopardizing the defendant's own or others' safety, health, or welfare if placed in a correctional or probation setting, or lacks the ability to provide the basic necessities of life, such as food, clothing, and shelter, if placed on probation; and
> (B) the [Department of Human Services] is able to provide the defendant with treatment, care, custody and security that is adequate and appropriate to the defendant's conditions and needs.

*Id.* § 77-16a-104(3)(a)(ii). If the sentencing court commits the defendant to the state hospital, the court must order the defendant to be committed there until transferred to the state prison "in accordance with Sections 77-16a-203 and 77-16a-204, making provision for readmission to the Utah State Hospital whenever the requirements and conditions of Section 77-16a-204 are met." *Id.* § 77-16a-202(1)(a). Section 77-16a-204 provides for readmission to the state hospital if a mentally ill defendant's condition deteriorates. *Id.* § 77-16a-204(6).

¶5     After his arrest, Otvos spent approximately two years in the state hospital until the district court found he was competent to proceed. Otvos then entered a GAMI plea. The district court received a presentence investigation report (PSI) and two GAMI evaluations. *See id.* § 77-16a-103 (describing procedure for determining whether a defendant currently has a mental illness). The PSI recommended incarceration. Both GAMI evaluations

indicated that Otvos currently suffered from a mental illness. The State asked for a prison sentence and commitment to the state hospital until Otvos could be transferred to the prison. Defense counsel argued for probation with mental health treatment. The district court imposed the statutory prison sentence of one-to-fifteen years, then committed Otvos to the state hospital until he became an appropriate candidate for prison. The judge stated that this sentence would provide Otvos with programming at the state hospital that would be beneficial to him and also said that he did not know if Otvos would ever spend a day at the prison.

¶6     Otvos claims that the sentencing court plainly erred by failing to make any provision for his readmission to the state hospital. However, the sentencing order stated that Otvos was "admitted to the Utah State Hospital for care and treatment until transferred to the Utah Department of Corrections in accordance with section 77-16a-203 and 77-16a-204." This incorporation satisfied the requirement of section 77-16a-202(1)(a) that the sentencing court make provision for readmission to the state hospital. Accordingly, Otvos can demonstrate neither plain error nor ineffectiveness of trial counsel as to this claim.

¶7     Otvos also claims that the district court plainly erred by not making an explicit finding that he posed an immediate danger to himself or others if committed to prison.

> [C]ommitment to the state hospital is an option only if the court finds both that the defendant's mental illness causes "an immediate physical danger to self or others, including jeopardizing the defendant's own or others' safety, health, or welfare if placed in a correctional setting," and that the state hospital is equipped to provide the defendant with the appropriate "treatment, care, custody, and security."

*State v. Swogger*, 2013 UT App 164, ¶ 7, 306 P.3d 840 (citation omitted). The district court committed Otvos to the state hospital and did not commit him to prison. Therefore, the district court necessarily made the determination required by section 77-16a-104(3). Absence of an explicit finding that Otvos posed an immediate danger to himself or others did not prejudice him in sentencing because he was committed to the state hospital. Even assuming that the Department of Human Services later transferred Otvos to prison, that decision would necessarily be based on the department's determination that, under the factors listed in section 77-16a-203(3)(a), continued commitment to the state hospital was not necessary. The claim that Otvos suffered prejudice because the district court did not make explicit findings regarding immediate danger because he was later transferred to the prison by the Department of Human Services is speculative. Because Otvos has not met his burden to establish prejudice "as a demonstrable reality," *see State v. McNeil*, 2013 UT App 134, ¶ 30, 302 P.3d 844 (citation and internal quotation marks omitted), *aff'd*, 2016 UT 3, 365 P.3d 699, he has not shown the prejudice necessary to succeed on either his claim of plain error or of ineffective assistance of counsel.

¶8     In his reply brief, Otvos argues that his "subsequent transfer to the prison violated the court's intended sentence," and that "[t]he fact that he ended up in prison so quickly illustrates that the trial court may not have given the sentence it intended." These claims lack merit. The sentencing options under the GAMI statutes were to place Otvos on probation and release him into the community or to sentence him to the statutory term and commit him to the state hospital until the Department of Human Services determined that he was eligible to be transferred to the prison. The district court imposed a sentence that complied with the GAMI statutes. Otvos has not demonstrated that the district court erred, let alone plainly erred, in imposing a sentence that complied with the GAMI statutes, or

that trial counsel was ineffective in addressing the sentencing options.

¶9     Accordingly, we affirm.

───────────